Hideaki Sano (CA Bar No. 248058)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
105 East Main Street
Northville, MI 48167
(248) 679-8711
sano@sppplaw.com

Attorneys for Plaintiff JOHN GREGORY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GREGORY,<br><br>    Plaintiff<br><br>vs.<br><br>ACRISURE, LLC, BENEFITS MATCHMAKING LLC and ADAM DEVONE, and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO.: **'24CV1203 JES  MMP**<br><br>**PLAINTIFF'S COMPLAINT;**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff JOHN GREGORY, an individual, hereby makes the following allegations against DEFENDANTS ACRISURE, LLC, BENEFITS MATCHMAKING LLC and ADAM DEVONE, and DOES 1 through 10, inclusive:

1.    This is an action for damages and other relief based Mr. Gregory's claims against Acrisure, LLC, Benefits MatchMaking LLC, and Devone for their improper actions in misappropriating his ownership interest in Suvaun, a "web-based platform that streamlines the benefits procurement and enrollment process across stakeholders and product lines."

## JURISDICTION AND VENUE

2.     The Court has personal jurisdiction over this matter as set forth in the allegations below regarding the parties.

3.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 given the diversity of citizenship of the parties and Mr. Gregory's damages in excess of $75,000.

4.     To the extent necessary, this Court has supplemental jurisdiction over any other claims under 28 U.S.C. § 1367.

5.     Venue is proper in this district pursuant to 28 U.S. Code § 1391 because it is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

6.     Mr. Gregory is an individual who resides in Delaware.

7.     Defendant Adam Robert Devone is a former partner of Mr. Gregory, who upon information and belief works and resides in Orange County, California.

8.     Defendant Acrisure LLC ("Acrisure") is a Michigan limited liability company that upon information and belief regularly conducts business in California both directly and through its wholly-controlled subsidiaries, and that engaged in various business activities with regard to the California businesses that are the subject matter of this litigation.

9.     Benefits MatchMaking LLC is a Michigan corporation registered to do business in California that regularly conducts business in California, and that engaged in various business activities with several California businesses that are the subject matter of this litigation.

10.     The true names and capacities, whether corporate, individual or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to Plaintiff, as herein alleged.  Plaintiff will seek leave of this Court to amend this Complaint to show their names and capacities when the same have been ascertained.  At all times mentioned in this Complaint, unless otherwise alleged, each Defendant was the agent, partner, or employee of every other Defendant, and in doing the acts alleged in this Complaint, was acting within the course, scope and authority of that agency, partnership, or employment, and with the knowledge and consent of each of the other Defendants.

## GENERAL ALLEGATIONS

11.     Mr. Gregory is a former executive at Automatic Data Processing ("ADP"), and former Vice President of the BXA Insurance Services Agency Operation of Acrisure of California, LLC, an Acrisure subsidiary.

12.     Mr. Gregory began working with Mr. Devone, and two other individuals named Rob Roof and Steve Voce after he left ADP in October of 2010.

13.     Because of his experience and skillset, Mr. Devone and the two other individuals offered Mr. Gregory part ownership of their entity called PenBen Financial Services, Inc. ("PenBenBiz"), a California corporation.  PenBenBiz operated primarily out of an address located at 23716 Birtcher Drive, Lake Forest, California 92630.

14.     PenBenBiz was eventually renamed Benefits Exchange Alliance, Inc. ("BXA") in reference to the exchanges created by the Patient Protection and Affordable Care Act.

PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL

15.    Among other responsibilities, Mr. Gregory had primary responsibility for the benefits administration side of the business and for compliance.

16.    On June 19, 2015, the four partners formed a new entity named Benefits MatchMaking, LLC, a California company ("BMM-CA").  BMM-CA also had a business address of 23716 Birtcher Drive, Lake Forest, California 92630.  BMM-CA was owned 50 percent by Mr. Devone, 25 percent by Mr. Gregory, 12.5 percent by Mr. Roof, and 12.5 percent by Mr. Voce (the "BMM Founders" or the "Partners").  The Partners shifted the benefits administration services business to BMM-CA.

17.    In addition to his full-time role with BXA, Mr. Gregory bore primary responsibility for the operations side of BMM-CA.  BMM-CA's benefits administration services were essentially offered as a loss leader in order to help secure and maintain insurance business for BXA and to comply with the PPACA employer reporting mandate.

18.    During this period, Acrisure, LLC ("Acrisure") began discussions with Mr. Devone regarding acquiring the insurance agency.  Mr. Devone is a licensed securities broker and represented the interests of the other Partners in these negotiations.

19.    In September of 2016, Acrisure acquired the client accounts and goodwill of BXA and Pension & Benefit Insurance Services, Inc. (another company that Mr. Devone and Mr. Voce had been operating) through its entity Acrisure of California, LLC ("Acrisure of CA").

20.    As part of the acquisition, Mr. Gregory became the Vice President of BXA Insurance Services Agency Operation, one of many d/b/a's for Acrisure of CA.  Consistent with an oral agreement that Mr. Gregory had reached with Mr. Devone and the other Partners,

Mr. Gregory was treated as a 20 percent owner for purposes of the acquisition, including two earnout periods that were part of the 2016 acquisition.

21.    At the time of this acquisition, however, Acrisure elected not to acquire BMM-CA upon information and belief because it was unclear about the ultimate benefit or value of the general agency and other services that BMM-CA provided and was developing.  Instead, Acrisure simply acquired the client book and good will of BMM-CA.

22.    At the same time, Acrisure agreed that it would fund BMM-CA's business ventures and began laying the groundwork for a potential acquisition of the general agency and other services provided by BMM-CA, including a Quote to Carrier (QTC) solution that would eventually be named Suvaun.  The Partners and Acrisure agreed that a new company would be formed that would house their joint activities.

23.    On April 11, 2017, Acrisure formed an entity named Benefits MatchMaking LLC, a Michigan company ("BMM-MI") and qualified it to do business in California.

24.    Acrisure was the majority member of BMM-MI, upon information and belief through its subsidiary Acrisure MGA, LLC.

25.    BMM-MI would continue to work on the BMM-CA business lines.  It was agreed by the BMM Founders that their interest in the BMM-MI venture would mirror their interests in BMM-CA.

26.    The Partners thereafter discovered a company called BenRevo, Inc. ("BenRevo") whose principals, Jimson Tharayil, Ojas Sitapara, and Jason Char (the "BenRevo Founders"), demonstrated that they could develop the technological portion of the QTC platform.  The Partners convinced Acrisure to purchase BenRevo.  BMM-MI acquired the assets of BenRevo, Inc. and BenRevo LLC.

27.    Together, the BMM Founders and BenRevo Founders (collectively, the "Suvaun Owners") branded the QTC solution as Suvaun. It was operated under the BMM name and licenses for tax purposes.  Mr. Gregory was an Executive Vice President of Suvaun venture, along with Jimson Tharayil, and one of four members of the Executive Team along with Mr. Devone and Mr. Roof.

28.    Over the next few years, the Suvaun Owners held weekly meetings conducted from the CA location about product development and rollout strategy for Suvaun.  The only member who did not regularly participate in the development of the Suvaun product was Mr. Voce.  Mr. Gregory, was not compensated for the time and labor that he provided related to various work for the Suvaun platform, including the development and marketing of, and securing of carrier contracts, conduct of pilots and California book of business roll-up process for the Suvaun platform; it was understood that his compensation was in the form of sweat equity.

29.    As matters proceeded, Mr. Devone indicated his intent to act as a representative of the Suvaun Owners with regard to Acrisure; according to Mr. Devone, Acrisure wanted to deal with one individual, not seven partners.

30.    The Suvaun Owners continued to develop the Suvaun platform, including validating it in the California marketplace, including conducting pilot studies.  Eventually, Acrisure also began causing certain books of business with Acrisure-controlled entities to "roll-up" into the BMM-MI general agency so that the entities could use the Suvaun platform and BMM-MI could start to develop a revenue stream on existing business.

31.    During this period, Acrisure and the Suvaun Owners – again, mostly through Mr. Devone – began discussing a potential valuation of Suvaun.  This included discussions

PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL

with Matthew Schweinzger, the then Chief Financial Officer and Chief Acquisition Officer of Acrisure.

32.     In early 2021, after managing a Suvaun pilot with prospective client, ADP, Mr. Gregory realized that rather than selling the Suvaun platform to third parties based on a revenue/EBIDTA model, the Suvaun Owners should focus on selling the Suvaun platform to Acrisure itself, given potential operational cost savings that would be realized across the entire employee benefits group of Acrisure.

33.     In January of 2022, the Suvaun Owners met at the Birtcher Drive office to discuss finalizing a valuation of Suvaun, and approving the effort to sell their remaining 35 percent interest in the Suvaun platform directly to Acrisure.  The Suvaun Owners unanimously voted in support of the sale.

34.     Between February 2022 and the date of Acrisure's acquisition of the 35 percent interest of the Suvaun Owners, Mr. Devone would periodically update the Suvaun Owners about the status of the negotiations.  Generally, he commented that the parties were "still working on it," that it was complicated, and that he was still "trying to get Acrisure to the table."

35.     On July 12, 2022, Mr. Gregory called Mr. Devone about the status of the sale of the Suvaun platform.  Mr. Devone indicated that the sale would take place soon.  Mr. Gregory then waited patiently for an update.

36.     On September 1, 2022, Mr. Gregory sought an update from Mr. Devone.  Mr. Devone communicated via text to Mr. Gregory that there was no buyer, but that he was having a meeting to lay out a plan, and that they should "stay tuned."  Mr. Gregory continued to wait.

37.     At a BXA senior staff meeting on September 6, 2022, Mr. Roof shared with Mr. Gregory and others that Suvaun had actually been sold, but that Mr. Devone claimed to have waived his rights, and that no one was paid, including himself or any of the other Partners.  Mr. Gregory was surprised by this information, but regardless, knew that he had clearly never agreed to waive his own ownership interest in the Suvaun platform.

38.     Immediately following the senior staff meeting, Mr. Gregory attempted to contact Mr. Devone.  When he was finally able to get ahold of Mr. Devone, Mr. Devone continued to state that he had waived everyone's rights to Suvaun.  But as Mr. Gregory continued to push Mr. Devone about the other owners, Mr. Devone admitted that at least one of the Suvaun Owners, Mr. Tharayil, had been paid a "stipend".

39.     Mr. Gregory was able to verify that Mr. Tharayil and his team, the BenRevo Founders, had been paid in full, not a "stipend" as per Mr. Devone, consistent with their ownership interest in the Suvaun.

40.     After numerous attempts to again get Mr. Devone on the phone, Mr. Gregory finally reached Mr. Devone on Sunday September 11, 2022 with the certainty that Mr Tharayil and the BenRevo Founders had been paid in full and consistent with what the Suvaun Owners discussed as a purchase price, Mr. Devone admitted that Mr. Tharayil had been paid in full, and indicated that he would push Greg Williams, the CEO of Acrisure, to pay Mr. Gregory and others, but Mr. Gregory soon discovered that this claim was also false.

41.     Mr. Gregory immediately approached Acrisure about the actions of Mr. Devone related to the sale of his interest in Suvaun.  Although Acrisure at first put up a front of being concerned about the situation, upon information and belief, Acrisure was simply deceiving Mr. Gregory in order to prevent him from taking action to protect his interests.

42. Upon information and belief, Acrisure continues to use the Suvaun platform. Mr. Gregory has sought payment of the sums owed to him from Acrisure, but Acrisure has refused to compensate him.

**FIRST CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
(Against Defendants Devone, BMM-MI, and Acrisure AND DOES 1-10)

43. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

44. Mr. Gregory, Mr. Devone, BMM-MI, and Acrisure, both directly and upon information and belief through Acrisure MGA, LLC, were joint venturers/partners in the development of the Suvaun platform.

45. As joint venturers/partners, they owed each other fiduciary duties.

46. Mr. Devone, BMM-MI, and Acrisure breached their duties when they wrongfully and intentionally usurped Mr. Gregory's interest in the Suvaun platform without consent, justification or compensation.

47. As a consequence of Defendants' actions, Mr. Gregory has been harmed.

48. Defendants acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**CONCEALMENT**
(Against Defendants Devone, BMM-MI and Acrisure AND DOES 1-10)

49. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

50. Devone, BMM-MI and Acrisure were partners and/or joint venturers with Mr. Gregory in developing the Suvaun platform.

PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL

51.    Devone, BMM-MI and Acrisure failed to disclose to Mr. Gregory that Devone no longer intended to honor his agreement with Mr. Gregory as a partner to distribute 25 percent of the Partners' share of the sale of the Suvaun platform to him.

52.    Mr. Gregory was unaware of this concealed fact.

53.    Devone intended to deceive Mr. Gregory by concealing the fact, and BMM-MI and Acrisure were aware of Devone's improper intent and actions.

54.    Had the fact been disclosed to Mr. Gregory, he would have taken additional steps to ensure that he received the 25 percent of the Partners' share of the Suvaun sale, and/or would not have worked on the Suvaun platform until his right was completely secure.

55.    As a consequence of Devone's actions, Mr. Gregory has been harmed.

56.    Defendants acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

### THIRD CAUSE OF ACTION
### <u>CONVERSION</u>
(Against Defendants Devone and BMM-MI AND DOES 1-10)

57.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

58.    Mr. Gregory has a 25 percent ownership interest of the Partners' share of the Suvaun platform.

59.    Devone wrongfully transferred Mr. Gregory's 25 percent ownership interest of the Partners' share of the Suvaun platform to BMM-MI without his consent.

60.    BMM-MI is now in possession of Mr. Gregory's 25 percent ownership interest of the Partners' share of the Suvaun platform without Mr. Gregory's consent.

61. As a consequence of Devone and BMM-MI's actions, Plaintiff has been harmed.

62. Defendants acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
(Against Defendant Devone AND DOES 1-10)

63. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

64. Mr. Gregory and Devone orally agreed that Mr. Gregory was a 25 percent owner in the venture to develop the Suvaun platform and among other benefits, would receive 25 percent of the Partners' share of the sale of the Suvaun platform.

65. In exchange for the ownership interest and promised compensation, Mr. Gregory spent substantial time working to develop the Suvaun platform in order to enable the Suvaun Owners to sell and monetize their interests in the Suvaun platform.

66. Acrisure acquired the ownership of the Suvaun Owners in the Suvaun platform. But Devone failed to distribute to Mr. Gregory the portion of the payout attributable to Mr. Gregory's ownership interest in the Suvaun platform, or otherwise compensate him as per their agreement.

67. As a consequence of Devone's actions, Mr. Gregory has been harmed.

**FIFTH CAUSE OF ACTION**
**PROMISSORY ESTOPPEL (in the alternative)**
(Against Defendant Devone AND DOES 1-10)

68. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

69.    Devone promised Mr. Gregory a 25 percent interest of the Partners' share of the Suvaun platform, including in the proceeds of any sale of the Suvaun platform, if Mr. Gregory worked to help develop the Suvaun platform.

70.    Devone made this promise to Mr. Gregory in order to induce Mr. Gregory to work to help develop the Suvaun platform, and Mr. Gregory relied on this promise when he worked to help develop the Suvaun platform.

71.    Mr. Gregory's reliance on Devone's promise was reasonable under the circumstances.

72.    Even though Mr. Gregory fully performed his obligation to help develop the Suvaun platform, Devone breached his promise by not compensating Mr. Gregory as Devone had promised.

73.    As a consequence of Devone's actions, Mr. Gregory has been harmed.

**SIXTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION**
(Against Defendant Devone AND DOES 1-10)

74.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

75.    Devone repeatedly represented to Mr. Gregory on a several occasions in 2021 and 2022 that Mr. Gregory would be entitled to and receive 25 percent of the Partners' share of the sale of the Suvaun platform.

76.    When Devone made these representations, he knew them to be false or made the representations recklessly and without regard to their truth.

77.    Devone intended that Mr. Gregory would rely on the misrepresentations, Mr. Gregory did rely on the misrepresentations, and Mr. Gregory's reliance on the misrepresentations was reasonable.

78.    As a consequence of Devone's actions, Mr. Gregory has been harmed.

**SEVENTH CAUSE OF ACTION**
**PROFESSIONAL NEGIGLENCE**
(Against Defendant Devone AND DOES 1-10)

79.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

80.    Devone is a licensed securities broker and represented to Mr. Gregory that he would act in Mr. Gregory's best interests - along with the other Suvaun Owners - in negotiating terms for the acquisition of the Suvaun platform by Acrisure, including ensuring that Mr. Gregory would receive 25 percent of the Partners' share of the sale of the Suvaun platform.

81.    Instead Devone placed his own self-interest ahead of the interests of Mr. Gregory, and misappropriated Mr. Gregory's share of the proceeds of the sale of the Suvaun platform from Mr. Gregory.

82.    As a consequence of Devone' actions, Plaintiff has been harmed.

83.    Defendant acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**CONSTRUCTIVE FRAUD**
(Against Defendant Devone AND DOES 1-10)

84.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL

85.     Devone is a licensed securities broker and represented to Mr. Gregory that he would act in Mr. Gregory's best interests - along with the other Suvaun Owners - in negotiating terms for the acquisition of the Suvaun platform by Acrisure, including ensuring that Mr. Gregory would receive 25 percent of the Partners' share of the sale of the Suvaun platform.

86.     Devone knew that he was not negotiating on Mr. Gregory behalf and intended to misappropriate his 25 percent interest, but misled Mr. Gregory by failing to disclose this information.

87.     As a consequence of Devone' actions, Mr. Gregory has been harmed.

88.     Defendants acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

**NINTH CAUSE OF ACTION**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
(Against Defendants BMM-MI and Acrisure AND DOES 1-10)

89.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 to 42 as if fully set forth hereafter.

90.     Acrisure and BMM-MI knew that Devone was breaching his fiduciary duty to Mr. Gregory as previously alleged.

91.     Acrisure and BMM-MI gave substantial assistance to Devone in his breach such that he would not have been able to accomplish his breach without their aid.

92.     Acrisure's and BMM-MI's conduct was a substantial factor in causing harm to Mr. Gregory

93.     As a consequence of Devone' actions, Mr. Gregory has been harmed.

94. Defendants acted with fraud, oppression and/or malice entitling Mr. Gregory to an award of punitive damages.

**WHEREFORE** Plaintiff prays that this honorable Court issue a judgment in his favor and award him the following remedies:

a. Any and all damages attributable to Defendants' improper and/or illegal actions, including but not limited to compensatory, general, and consequential damages according to proof;

b. Punitive damages according to proof;

c. The costs of suit, including attorney fees and costs; and

d. Any further legal and equitable relief that Plaintiff may request and that the Court may deem just and proper.

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Hideaki Sano
Hideaki Sano (248058)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
sano@spplaw.com

DATED: July 15, 2024

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims.

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Hideaki Sano
Hideaki Sano (248058)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
sano@spplaw.com

DATED: July 15, 2024

---

PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL